J. Edward Brooks, State Bar No. 247767
Eliezer M. Cohen, State Bar No. 302248
GAVRILOV & BROOKS
2315 Capitol Avenue
Sacramento, CA 95816
Telephone:     (916) 504-0529
Facsimile:     (916) 473-5870
Email:         ebrooks@gavrilovlaw.com

Attorneys for Plaintiff
THOMAS NIEDERREUTHER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| THOMAS NIEDERREUTHER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ATWATER, a public entity; and WILLIAM NOVETZKE, an individual.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>1. **AGE HARASSMENT IN VIOLATION OF THE ADEA;**<br>2. **AGE HARASSMENT IN VIOLATION OF FEHA;**<br>3. **AGE DISCRIMINATION IN VIOLATION OF THE ADEA;**<br>4. **AGE DISCRIMINATION IN VIOLATION OF FEHA;**<br>5. **FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE ADEA;**<br>6. **FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF FEHA;**<br>7. **VIOLATION OF FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS;**<br>8. **BREACH OF EMPLOYMENT CONTRACT;**<br>9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>10. **VIOLATION OF THE FAIR LABOR STANDARDS ACT AND THE MEMORANDUM OF UNDERSTANDING** |

**JURY TRIAL DEMANDED**

Plaintiff, THOMAS NIEDERREUTHER, hereby alleges the following:

**PARTIES**

1.   Plaintiff THOMAS NIEDERREUTHER (hereinafter "Officer Niederreuther" or "Plaintiff") is, and at all times mentioned herein was, an individual residing in the City of Modesto, Stanislaus County, California.

2.   Atwater Police Department (hereinafter "APD") is, and at all times mentioned herein was, a public agency controlled, operated, and managed by Defendant CITY OF ATWATER.  The APD and the City of Atwater are based and located in Merced County, California.

3.   Upon information and belief, Defendant WILLIAM NOVETZKE (hereinafter "Novetzke") is a sergeant in the APD, and has held a position of sergeant within the APD and for the City of Atwater since December 2015.  Upon further information and belief, Novetzke held a position as police officer within the APD and for the City of Atwater until mid-2013, after which he held a position as a corporal within the APD and for the City of Atwater through November 2015.

4.   Upon information and belief, Frank Pietro (hereinafter "Chief Pietro") is the Chief of Police of the APD, and has held the position of Chief of Police within the APD and for the City of Atwater since late 2011, and has also held the title of City Manager since late 2012.

5.   Upon information and belief, Samuel Joseph is a lieutenant in the APD, and has held the position of lieutenant within the APD and for the City of Atwater since late 2012.  Prior to being a lieutenant, Samuel Joseph held the position of sergeant within the APD and for the City of Atwater (hereinafter "Lt. Joseph" or alternatively "Sgt. Joseph").

6.   Upon information and belief, at all times mentioned herein each of the Defendants was the agent or employee of each of the remaining Defendants and, in doing the things alleged, was acting, at least in part, within the course and scope of, and in pursuance of,

such employment and agency, with the express and implied permission, consent and knowledge, approval and/or ratification of the remaining Defendants.

7.     Relief is sought against each and all Defendants as well as their agents, assistants, successors, assigns, employees, and persons acting in concert or cooperation with them or at their direction or under their supervision.

8.     At all times herein, Plaintiff was duly qualified and did perform all duties and responsibilities on his part, which duties and responsibilities were part of the employment relationship between Defendants and Plaintiff.

9.     Plaintiff was, at all times herein, an employee covered by 29 U.S.C. § 261 and California Government Code § 12940 prohibiting discrimination and retaliation in the workplace.

10.     Defendant City of Atwater is, at all times herein mentioned was, an employer within the meaning of 29 U.S.C. § 261 and California Government Code § 12926(d) and, as such, was, and is, statutorily prohibited from discriminating and retaliating in employment decisions on the bases set forth in the aforementioned statutes.

11.     Plaintiff has met all jurisdictional requirements, where applicable, for proceeding with his claims.  Plaintiff timely filed an administrative complaint with the Department of Fair Employment and Housing and received a Right-to-Sue letter from DFEH dated March 10, 2016. Plaintiff also timely received a Notice of Right-to-Sue from the U.S. Equal Employment Opportunity Commission dated March 17, 2016. True and correct copies of the Right-to-Sue notices are attached hereto as Exhibits One and Two.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under 29 U.S.C. § 621 *et seq.*, U.S. Const. amend XIV§ 1, and 29 U.S.C. 201 *et seq.*  Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over those claims arising under California statutory law and California common law.

13.     This is a district of proper venue.  Plaintiff resides in Stanislaus County, Defendants are based in Merced County, and the discriminatory and related acts occurred there.

Merced County, and Stanislaus County, are part of the Fresno Division of the Eastern District of California.

## GENERAL ALLEGATIONS

14.    Officer Niederreuther faithfully served as a hard-working police officer for the City of Atwater and APD continuously for five years.  Throughout his career, Officer Niederreuther received praise for his police work and attracted little criticism.  There were some, though, within the APD that continually and determinately harassed, annoyed, and discriminated against Officer Niederreuther due to his age, and sought to stop Officer Niederreuther from moving higher in the ranks of the APD.  Suddenly, about five years after his career began and shortly before he would receive an official promotion to a tenured officer position, Officer Niederreuther was unceremoniously terminated.

15.    Officer Niederreuther has long enjoyed and strived to be a peace officer and work to improve and help his community.  After beginning his career as an attorney, Officer Niederreuther served as a volunteer firefighter for the Corte Madera Fire Department and as a reserve police officer for the City of Ceres Police Department.  To continue his ambition to become a fulltime police officer, Officer Niederreuther decided to pursue his goal and attain a career as a police officer for the APD and City of Atwater.

16.    Plaintiff began his career as a Reserve Police Officer within the APD and as an employee of the City of Atwater on January 28, 2011.

17.    During the initial period as Reserve Police Officer, new recruits were required to undergo and work their way through multiple phases of police officer field training. Throughout the field training process, several higher ranking officers would conduct the training and create daily evaluations at the end of each shift based on the recruit's progress.

18.    Plaintiff began the field training process for police officers in February 2011. Plaintiff received training from several officers, including Officers Richards, Howard, Haywood, Robinson, and Jantz.

19.    For the first several months of police officer field training, Plaintiff had performed well and there were no significant incidents.  Then, one day in or about September

2011, Defendant Novetzke offered to ride with Plaintiff and informally "give some pointers." When their first shift together began, Defendant Novetzke asked Plaintiff how old he was and told Plaintiff that he could not believe that Plaintiff "wanted to do this job at [his] age." After their second shift together the following day, Defendant Novetzke told Plaintiff that he wanted Plaintiff to re-do all of his prior field training or else be terminated, and said Plaintiff could not advance to the next phase of field training. Defendant Novetzke told Plaintiff to go home and await further instruction. Shocked, Plaintiff went home.

20. About a week or two later, Sgt. Joseph called Plaintiff and said that Plaintiff needed to meet with Chief Pietro on September 14, 2011. During the meeting, Chief Pietro told Plaintiff that he had reviewed Plaintiff's training file and that Plaintiff was cleared to continue into the next phase of training. Chief Pietro also said that Defendant Novetzke had, without authorization, evaluated and written a negative review about Plaintiff, but told Plaintiff not to worry about Defendant Novetzke and that his review would be shredded.

21. Subsequently, Plaintiff continued field training with other training officers. Plaintiff continued to work his way up the ranks, and Chief Pietro appointed Plaintiff as a Level 1 Reserve Police Officer on February 24, 2012.

22. As a Level 1 Reserve Police Officer, Plaintiff was now able to operate shifts as a solo police officer, and had all of the powers and authority of a full time officer while on duty. Through 2012 and mid-2013, Plaintiff continued to perform well. His shift supervisor, Sgt. Wisdom, trusted Plaintiff with handling calls, and gradually assigned Plaintiff more shifts and hours of work.

23. In or about January of 2013, Plaintiff ran into Chief Pietro in the hallway of APD. Chief Pietro said that the APD would likely be hiring fulltime police officers in July 2013, and that Plaintiff would get a fulltime job as an officer for the APD. Plaintiff asked Chief Pietro to keep him updated of any openings. Every few months, Plaintiff periodically checked with Chief Pietro regarding promotions to fulltime police officer positions.

24. In or about June 2013, Defendant Novetzke was promoted from an officer to a corporal within the APD. This promotion made Defendant Novetzke a day shift supervisor for

the APD police officers, joining Sgt. Wisdom.  Both Sgt. Wisdom and Defendant Novetzke would assign shifts and hours to Plaintiff.

25.     Shortly after becoming a shift supervisor, Defendant Novetzke began to micro-manage, harass, and make derogatory and ageist comments to Plaintiff.  As Plaintiff's supervisor, Defendant Novetzke frequently made pejorative comments and questions to Plaintiff, such as: "how old are you?," "who is older, you or Duncan?," and "why do you even want to do this job at your age?"  Defendant Novetzke also routinely pretended to guess Plaintiff's age as a higher age than Plaintiff was, and tell Plaintiff, "I can't believe you want to work this job full time at your age."

26.     Defendant Novetzke's recurrent harassing comments all offended, irritated, and annoyed Plaintiff and made Plaintiff feel very uneasy and uncomfortable being under Defendant Novetzke's supervision and control.  However, Plaintiff feared retaliation for reporting Defendant Novetzke, because Defendant Novetzke was a high ranking officer within the APD and Plaintiff was attempting to receive a promotion to a fulltime officer position within the APD.

27.     In or about July 2013, Plaintiff was promoted to a "contract" reserve police officer for the APD.  The "contract" officer position was largely equivalent to the fulltime officer position.  As a "contract reserve police officer," Plaintiff worked his shifts without direct supervision, was a W-2 employee, and received retirement benefits.  Plaintiff's hours also increased to forty (40) or more hours per workweek.

28.     During the remainder of 2013, Cpl. Echevarria and Sgt. Wisdom were Plaintiff's shift supervisors, and in early 2014 Cpl. Smothers joined Sgt. Wisdom as Plaintiff's shift supervisor.  Throughout this period, Plaintiff continued to perform his work well.

29.     In the summer of 2014, Defendant Novetzke again became one of Plaintiff's shift supervisors.  As before, Defendant Novetzke continued to make harassing and hostile comments about Plaintiff's age, incorrectly "guessing" Plaintiff's age and asking why Plaintiff even wanted to work fulltime for a person his age.  At the time, Plaintiff was still seeking a

position as a non-contract fulltime police officer for the APD, and feared retaliation for reporting Defendant Novetzke.

30.     On occasion, Plaintiff and Defendant Novetzke saw each other in various social settings in 2013 and 2014.  Even during these social settings, Defendant Novetzke continued to harass and make derogatory and ageist comments to Plaintiff, and question Plaintiff regarding his age and reason for wanting to be a fulltime police officer at his age.

31.     By early 2015, Plaintiff was working on the graveyard shift supervised by Cpl. Snyder and Cpl. Smothers.  Defendant Novetzke was supervising the "swing" shift and was no longer Plaintiff's direct supervisor.  Nevertheless, Defendant Novetzke continued to subject Plaintiff to hyper-scrutiny and attempted to micromanage Plaintiff's work.

32.     In or about February 2015, Plaintiff approached Chief Pietro and asked if the APD was ready to begin hiring fulltime police officers again.  Chief Pietro said that APD was, but that Defendant Novetzke had recently voiced concern to him about Plaintiff being "slow" and about how Plaintiff performed a DUI sobriety test on the graveyard shift.  Plaintiff defended his work record to Chief Pietro, and expressed concern to Chief Pietro that Defendant Novetzke had constantly micromanaged Plaintiff and sought to get Plaintiff fired.  Chief Pietro told Plaintiff not to worry for now and that he would be hired as a fulltime police officer imminently.

33.     Shortly thereafter, Plaintiff discovered that a fulltime day shift was opening. Plaintiff told Sgt. Wisdom that he was interested in the day shift in order to lessen his interaction with Defendant Novetzke.  Plaintiff did not want to be involved in the uncomfortable, distressing, and harassing environment that had been created by Novetzke.

34.     The next time Plaintiff saw Defendant Novetzke, Novetzke told Plaintiff that if there was a problem between them, Plaintiff should tell him and not his bosses.  Novetzke explained that he had a good relationship with his bosses.  Novetzke then mentioned to Plaintiff that he heard that Plaintiff was trying to transfer off of "his shift."

35.     Concerned, Plaintiff sent a text message to Chief Pietro, asking if Plaintiff would be able to talk to Defendant Novetzke more openly about Plaintiff's concerns regarding

Novetzke's treatment of him.  A few days later, Chief Pietro told Plaintiff that he preferred that Plaintiff not discuss it in order to avoid making any "waves."

36.    Soon afterwards, Chief Pietro told Plaintiff that, based on recommendations from Cpl. Snyder and Sgt. Wisdom, Plaintiff would be hired as a fulltime police officer within the APD and for the City of Atwater.

37.    On March 19, 2015, Plaintiff was formally sworn in as a "fulltime" Police Officer for the City of Atwater.  The promotion occurred amid much fanfare and press in what was described as a "monumental" ceremony.  Four other people were formally sworn in as fulltime police officers at the ceremony.

38.    Although Plaintiff had been an officer for APD for the four years prior to March 19, 2015, and had been a fulltime contract police officer for almost two years, the City of Atwater and APD stated to the press that it was excited to have "new" boots on the ground.

39.    At the time Plaintiff was sworn in as a fulltime Police Officer, he was fifty-three (53) years old.  Plaintiff was the oldest of the five police officers sworn into the APD.

40.    At the time of the swearing-in ceremony, Plaintiff had the highest seniority of the five new fulltime police officers because Plaintiff had been an officer at the APD for the longest period of time.  Seniority within the APD is critical, as it affects layoffs, vacations, overtime preference, chain-of-command, and more.  However, when Plaintiff was formally promoted, Plaintiff was given the lowest seniority of the five new officers, in violation of the seniority provisions of the Atwater Police Officer Association's Memorandum of Understanding (hereinafter "MOU" and attached as Exhibit Three).  This lack of seniority surprised Plaintiff because of his work record and because, in the prior month, Chief Pietro told Plaintiff that he would be promoted as the most senior officer in his class due to his longevity with the APD.

41.    Plaintiff and the four other newly sworn-in officers entered a "probationary" phase following their promotion to fulltime police officers.

42.    Although Plaintiff had requested a shift change so as to avoid the recurring offensive comments, harassment, and discrimination of Defendant Novetzke, Plaintiff's request

was rejected.  Sgt. Wisdom informed Plaintiff that he would move Plaintiff to his shift in a few months, by July 2015.

43.     Upon Plaintiff being promoted to a fulltime police officer, Defendant Novetzke increasingly directed offensive, derogatory, harassing, and discriminatory comments and conduct towards Plaintiff in earnest.  Novetzke regularly made insulting and ageist comments to Plaintiff, pretended to guess Plaintiff's age, told Plaintiff he did not "know why" Plaintiff was still working, and expressed mocking disbelief that Plaintiff still wanted to work at his age.

44.     Unfortunately, other members of the APD began also began to join in Defendant Novetzke's wrongful and unlawful behavior.  One such member was Novetzke's good friend and roommate, Officer Robinson.

45.     One evening, in or about early May, 2015, Plaintiff made a DUI stop which resulted in a felony arrest.  Officer Robinson became upset at Plaintiff for creating "extra" paperwork, and verbally berated Plaintiff in front of Novetzke and other officers.

46.     About one week later, Defendant Novetzke called Plaintiff into his office and issued a counseling memo regarding time management.  He told Plaintiff to be more of a team player and to correct "time management" and efficiency problems.  These "time management" concerns were unfounded.

47.     After discussing the memo with Plaintiff, Defendant Novetzke asked Plaintiff if he thought that Novetzke was picking on him.  Novetzke said he was "documenting everything" and "lining up his ducks" in case Plaintiff "got fired."  Concerned for his position, as Plaintiff was in the middle of his probationary period, Plaintiff simply said that he would do his best to satisfy Novetzke's concerns about time management.

48.     Upon information and belief, shortly after Defendant Novetzke met with Plaintiff, Novetzke enlisted Officer Robinson to also report Plaintiff for "time management" issues.  Within a few hours of the meeting between Novetzke and Plaintiff, Robinson wrote an e-mail to Lt. Joseph complaining that Plaintiff lacked efficiency, had poor time management, and needed to be "coddled."  The letter also stated that Plaintiff was being too proactive on his

shifts and created additional paperwork, and that Officer Robinson was frustrated that Plaintiff was recently promoted and that they had to work shifts together.

49. The false characterizations of Plaintiff's performance made by Defendant Novetzke and Officer Robinson play directly to the stereotype of older officers as being "slow" and "inefficient" as fulltime officers. These stereotypes and characterizations do not fit Plaintiff in any respect. Interestingly, Plaintiff's work activity was twice as much as Officer Robinson's work activity in the 30 days prior to Robinson's complaint.

50. Sgt. Wisdom soon found out about Officer Robinson's complaint, and suggested to Plaintiff that Plaintiff draft a "response memo," which Sgt. Wisdom would forward to Lt. Joseph. Plaintiff followed the suggestion.

51. Lt. Joseph e-mailed Plaintiff and requested a meeting between himself, Plaintiff, and Officer Robinson. Plaintiff responded with times that he was available to meet.

52. On the following day, Plaintiff and Lt. Joseph saw each other in the APD's parking lot, and Lt. Joseph requested that they go to his office right then to meet. They then held the meeting without Officer Robinson present.

53. When the meeting began, Lt. Joseph told Plaintiff, "You are 54[1]. You can't relate to the younger cops. They are the age of your kids or grandkids. I don't know why you would want this job anyway. Most cops your age are already captains or chiefs." Joseph then recounted to Plaintiff a story about an "older" reserve officer that he knew in Los Angeles that did not want to be a fulltime police officer at his age. This "older" officer preferred to work part time and knew his position was just to be there to "help out." Joseph told Plaintiff that he thought that this story was analogous to Plaintiff's "situation."

54. Lt. Joseph said that he would not discuss Officer Robinson and wanted to discuss Plaintiff's situation instead. He then told Plaintiff that Plaintiff was a probationary officer, and that although Plaintiff's statistics were good, there were some other "issues" and that Plaintiff could be fired for any reason whatsoever, without recourse. Plaintiff requested to know what

---

[1] At the time, Plaintiff was fifty-three (53) years old, though Defendant Novetzke frequently "guessed" that Plaintiff was always a year older than Plaintiff's actual age.

the "issues" were.  Joseph told Plaintiff that he had time management issues because Novetzke and Robinson "said so."  Joseph also said that Plaintiff had "officer safety" issues, but Joseph was incapable of elaborating or citing any material example of such issues.

55.     Less than one day after meeting with Lt. Joseph, Defendants retaliated against Plaintiff and placed him on a one-month performance improvement plan ("PIP") for time management, teamwork, and officer safety.  Under the PIP, Plaintiff's work would be carefully monitored and scrutinized.

56.     While alleged concerns about time management and inefficiency seemingly resulted in a PIP for Plaintiff, far greater transgressions resulted in little to no discipline for other younger officers that were sworn in with Plaintiff in March, 2015.  For example, one Officer ran a red light without activating his siren, causing his vehicle to flip over another vehicle and sending the other driver to the hospital.  Another Officer was accused of punching his wife in a store parking lot.  Neither had to undergo a PIP following their policy violations.

57.     Plaintiff's PIP was cleared in July 2015 and Plaintiff received a memo stating that all of the issues were resolved and that he no longer needed to be monitored.  Sgt. Wisdom told Plaintiff that the PIP's daily evaluations of Plaintiff were "99 percent positive" and that even Defendant Novetzke agreed that Plaintiff had performed well.

58.     Despite the PIP being resolved, Defendants had subjected Plaintiff to an unauthorized disciplinary action in the form of a retaliatory PIP.  Moreover, the defamatory complaint filed by Defendant Novetzke remained in Plaintiff's personnel file.

59.     In July 2015, Plaintiff was switched to "swing" shift, which was then supervised by Defendant Novetzke and Cpl. Smothers.  Throughout the remainder of 2015, Plaintiff received positive feedback from both Novetzke and Cpl. Smothers regarding his work performance.  However, Novetzke continued to direct harassing, derogatory, and discriminatory age-related comments to Plaintiff.

60.     In or about December 2015, the APD and City of Atwater announced that Defendant Novetzke was being promoted to a higher-ranking sergeant position.

61.     In or about December 2015, Plaintiff was switched from "swing" shift to day shift.  Still, Defendant Novetzke continued to direct harassing, derogatory, and discriminatory age-related comments toward Plaintiff.  Plaintiff continued to work hard at his position, and even accepted all of the overtime hours that he was asked to work, which was not done by other officers in his swearing-in class.  Plaintiff did not receive any negative work criticisms during this period.

62.     In or about January 2016, Plaintiff realized that the standard 6-month "probationary" officer review was never conducted for himself and the four other officers that were sworn in with him during the prior year.  Plaintiff suspected that the APD may attempt to perform the overdue "probationary" reviews.

63.     On February 4, 2016, Plaintiff arrived at APD to begin his day shift.  Sgt. Wisdom saw Plaintiff, and asked Plaintiff to walk with him to meet with Chief Pietro.  Plaintiff did not know the reason for this unexpected meeting.

64.     Plaintiff walked into Chief Pietro's office with Sgt. Wisdom.  Defendant Novetzke then walked into the room.  Chief Pietro suddenly told Plaintiff that he was terminating him without cause, and that he would not discuss the issue further with Plaintiff.  Plaintiff attempted to begin discussing the sudden and unexpected news with Chief Pietro, but Chief Pietro simply asked Plaintiff to leave.  Sergeants Novetzke and Wisdom escorted Plaintiff out of the room.

65.     Plaintiff told Sgt. Wisdom that he did not know what he did to cause the termination, but Sgt. Wisdom responded that he could not comment. Plaintiff's gun and badge were then collected, and Plaintiff was told to clean out his locker and leave.

66.     Upon information and belief, aside from Defendant Novetzke, none of the other four patrol supervisors supported Plaintiff's termination in any way.  Plaintiff is further informed and believes that Sgt. Wisdom voiced his opposition to the termination, and that Cpl. Smothers, Sgt. Snyder, and Sgt. Echevarria were unaware of the termination until after it had occurred.

67.     Following Plaintiff's termination, the City of Atwater and the APD refused to provide any rationale for the termination decision despite Plaintiff's multiple requests.

68.     Contrary to APD Policy and the MOU, Plaintiff was never given a performance evaluation as a "probationary" employee.  In light of the fact that the "issues" raised in the PIP were resolved as of July 20, 2015 and no material issues arose thereafter, APD did not act on the basis of some purported deficit in performance.  Plaintiff was terminated for an unlawful reason, based on his age.

69.     Under section 5.3 of the MOU, "All employees who are promoted to any new position, regardless of classification, and all employees who are transferred to any new classifications shall be required to complete a probationary period of a minimum of six (6) months."   Plaintiff worked for the City of Atwater and APD in varying capacities as a police officer for five years, and worked full time since July of 2013.  On March 19, 2015, he was promoted to a "fulltime" Police Officer.  As an existing employee, his six month probationary period ended on or about September 19, 2015.

70.     At the end of Plaintiff's probationary period in or about September 2015, Plaintiff was entitled to receive an actual performance evaluation by his superiors, pursuant to the MOU.  In addition, Plaintiff was no longer a probationary employee.

71.     As a regular employee, and pursuant to section 12.2 the MOU, Plaintiff was entitled to specific notice of termination that would inform him of "the reasons for the proposed action" and a "copy of the charges and materials upon which the proposed action is based" ten (10) days prior to the termination.  Plaintiff never received such notice.

72.     As a regular employee, and pursuant to section 12.2 the MOU, Plaintiff was entitled to request a *Skelly* hearing to respond to the notice of a proposed termination, dismissal, or demotion.  Plaintiff's request for such a hearing was denied.

73.     The APD's denial of Plaintiff's due process rights was in furtherance of its efforts to hide its age animus by disguising Plaintiff as an at-will "probationary" employee.  In Plaintiff's position, he was entitled to all of the procedural protections inherent in the MOU.  Nevertheless, the APD's misclassification of Plaintiff as "probationary" not only deprived

Plaintiff of his right to a pre-termination *Skelly* hearing, a post-termination hearing, and the MOU's grievance procedures, it also allowed the APD and Defendants to remain silent to the true reasons for terminating Plaintiff.

74.   Upon information and belief, the City of Atwater filled Plaintiff's police officer position within the APD with Officer Radke, who was about thirty (30) years old at the time.

**WAGE AND HOUR ALLEGATIONS**

75.   The overtime requirements listed in the Atwater Police Officers Association MOU track those of the Fair Labor Standards Act (FLSA).

76.   Pursuant to section 9.1.1 of the MOU, overtime wages for safety members hired before March 1, 2015 are computed based on a seven (7) day work period and overtime wages must be paid for all hours worked over forty (40) hours worked in the work period.

77.   Pursuant to section 9.1.1 of the MOU, overtime wages for safety members hired after March 1, 2015 are computed based on a fourteen (14) day work period and overtime wages must be paid for all hours worked over eighty-six (86) hours worked in the work period.

78.   In or about July 2013, Plaintiff received a promotion and became a fulltime "reserve" police officer for the City of Atwater and the APD.  As a "reserve" officer, Plaintiff was assigned work shifts that increased his hours to forty (40) or more hours per week.

79.   During the period that Plaintiff served the City of Atwater and the APD as a reserve police officer, between approximately July 2013 and mid-March 2015, Plaintiff regularly worked in excess of forty (40) hours per week.

80.   In or about the last approximate year that Plaintiff served as a reserve police officer, the City of Atwater ceased paying overtime wages to Plaintiff unless Plaintiff worked in excess of one-hundred and seven (107) hours per a two week period.  In such circumstances, Plaintiff only received overtime pay for hours worked in excess of one-hundred and seven (107) hours over a two week period.

///

///

///

**<u>FIRST CAUSE OF ACTION</u>**
**AGE HARASSMENT IN VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**(29 U.S.C. § 621 *et seq*.)**
**(Against all Defendants)**

81.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 80 as though fully set forth herein and with the same force and effect.

82.     Plaintiff was subjected to the above described harassing conduct, including, but not limited to, frequent hostile, intimidating, and discriminatory comments and insults involving Plaintiff's age, derogatory jokes about Plaintiff being able to work a fulltime job "at his age," offensive attempts to "guess" how old Plaintiff was and why he wanted to work fulltime, complaints about Plaintiff being "slow," micro-managing and singling out Plaintiff's work product, and frequent suggestions that Plaintiff should work a desk job at his age.  Though Plaintiff was subjected to such harassing conduct throughout his employment with the City of Atwater, the magnitude of such harassment grew after each promotion that Plaintiff received and led up to Plaintiff being terminated shortly before becoming a "non-probationary" fulltime officer for the APD.

83.     The aforementioned conduct of Defendants, and each of them, was unwelcome. The repeated and regular harassing and hostile comments offended, irritated, and annoyed Plaintiff and made Plaintiff feel very uneasy and uncomfortable.

84.     The aforementioned conduct of Defendants, and each of them, was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive or hostile work environment on the basis of Plaintiff's age.

85.     Plaintiff perceived the working environment to be abusive or hostile.

86.     Moreover, a reasonable person in the Plaintiff's circumstances would consider the working environment to be abusive or hostile.

87.     The harassing and discriminatory acts and/or omissions were perpetrated by Plaintiff's supervisor, who participated in, assisted, and/or encouraged the harassing conduct as described herein.

88. The City of Atwater's managers, employees, and/or agents engaged in harassing and discriminatory conduct with the intent to harm Plaintiff. As described above, Defendant City of Atwater's representatives engaged in inappropriate conduct and created a hostile work environment for Plaintiff by continually making blatant derogatory, insulting, and offensive statements, comments, and jokes regarding Plaintiff's age.

89. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial. Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

90. Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

91. Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

92. The aforementioned discriminatory and despicable conduct of Defendants, and each of them, was done in bad faith, and with malice, fraud, and/or oppression, which subjected Plaintiff to cruel and unjust hardship with conscious disregard of Plaintiff's rights, such as to justify an award of exemplary and punitive damages.

**<u>SECOND CAUSE OF ACTION</u>**
**AGE HARASSMENT IN VIOLATION OF THE**
**CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT**
**(Cal. Gov. Code § 12940 *et seq*.)**
**(Against all Defendants)**

93. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 92 as though fully set forth herein and with the same force and effect.

94. Plaintiff was an employee of Defendant City of Atwater and worked for the APD.

95. Pursuant to California Government Code § 12940(j)(1), it is an unlawful employment practice for an employer to harass an employee because of age.

96. Plaintiff was subjected to the above-described unwanted harassing conduct on the basis of his age and in violation of California Government Code § 12940 *et seq.*

97. The harassing conduct was so severe, widespread, or persistent that a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

98. Plaintiff considered the work environment to be hostile or abusive.

99. The harassing acts and/or omissions were perpetrated by Plaintiff's supervisor, who participated in, assisted, and/or encouraged the harassing conduct as described herein.

100. The City of Atwater's managers, employees, and/or agents engaged in harassing and discriminatory conduct with the intent to harm Plaintiff. As described above, Defendant City of Atwater's representatives engaged in inappropriate conduct and created a hostile work environment for Plaintiff by continually making blatant derogatory, insulting, and offensive statements, comments, and jokes regarding Plaintiff's age.

101. Defendant City of Atwater or its agents and supervisors knew, or should have known, of the harassment and discrimination and failed to take prompt, effective remedial action reasonably calculated to remedy such inappropriate conduct or provide Plaintiff with a workplace free from discrimination and harassment.

102. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial. Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

103.   Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

104.   Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**
**AGE DISCRIMINATION IN VIOLATION OF**
**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**(29 U.S.C. § 621 *et seq*.)**
**(Against Defendant City of Atwater)**

105.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 104 as though fully set forth herein and with the same force and effect.

106.   Pursuant to 29 U.S.C. § 621 *et seq*., employees aged forty or older are protected from employment discrimination on the basis of their age.

107.   Defendant City of Atwater discriminated against Plaintiff and took adverse employment actions against on numerous occasions, as described above.  Such discrimination and adverse actions included, but are not limited to, requiring Plaintiff to undergo PIP monitoring, and terminating Plaintiff's employment with the City of Atwater.

108.   During Plaintiff's employment with Defendant City of Atwater, Plaintiff was at all times qualified for his position(s) and performed his duties satisfactorily.

109.   Plaintiff was forty years of age or older at the time of the adverse employment actions, as described above.

110.   The Defendants, and each of them, took the aforementioned adverse actions against Plaintiff because of his age.

111.   The City of Atwater's managers, employees, and/or agents engaged in harassing and discriminatory conduct with the intent to harm Plaintiff.  As described above, Defendant City of Atwater's representatives engaged in inappropriate and discriminatory conduct involving Plaintiff's age.

112.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.   Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

113.    Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

114.    Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**
**AGE DISCRIMINATION IN VIOLATION OF THE**
**CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT**
**(Cal. Gov. Code § 12940 *et seq*.)**
**(Against Defendant City of Atwater)**

115.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 114 as though fully set forth herein and with the same force and effect.

116.    Plaintiff was an employee of Defendant City of Atwater and worked for the APD.

117.    Pursuant to California Government Code § 12940(a), it is an unlawful employment practice for an employer to discharge an employee or discriminate against the employee in compensation or in terms, conditions, or privileges of employment because of the employee's age.

118.    Plaintiff was subjected to the above-described discrimination in the terms, conditions, or privileges of employment in violation of California Government Code § 12940(a).  Such discrimination and adverse actions included, but were not limited to, requiring

Plaintiff to undergo PIP monitoring and terminating Plaintiff's employment with the City of Atwater.

119.   Plaintiff was forty years of age or older at the time of the adverse employment actions, as described above.

120.   Defendant City of Atwater wrongfully created or knowingly permitted the above-described discriminatory and harassing working conditions to exist against Plaintiff on the basis of Plaintiff's age.  A motivating reason for Defendant's conduct towards Plaintiff was Plaintiff's age.

121.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

122.   Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

123.   Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION**
**IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**(29 U.S.C. § 621 *et seq*.)**
**(Against Defendant City of Atwater)**

124.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 123 as though fully set forth herein and with the same force and effect.

125.    Plaintiff was subjected to the above described hostile work environment and harassing and discriminatory conduct by Defendant City of Atwater and its representatives, managers, employees, and/or agents.

126.    Defendant City of Atwater or its agents and supervisors knew, or should have known, of the harassment and discrimination and failed to take prompt, effective remedial action reasonably calculated to remedy such inappropriate conduct or provide Plaintiff with a workplace free from discrimination and harassment.

127.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

128.    Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

129.    Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PREVENT HARASSMENT AND DISCRIMINATION IN VIOLATION OF CALIFORNIA'S FAIR EMPLOYMENT AND HOUSING ACT**
**(Cal. Gov. Code § 12940 *et seq*.)**
**(Against Defendant City of Atwater)**

130.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 129 as though fully set forth herein and with the same force and effect.

131.   Plaintiff was subjected to the above described hostile work environment and harassing and discriminatory conduct by Defendant City of Atwater and its representatives, managers, employees, and/or agents.

132.   The above described statements and conduct on the part of Defendants, and its representatives, managers, employees, and/or agents, represent a violation of the Fair Employment and Housing Act, which prohibits an employer from failing to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

133.   Upon information and belief, Defendant City of Atwater or its agents and supervisors knew, or should have known, of Defendant Novetzke's pattern of inappropriate conduct and harassment, and of the above described hostile work environment and harassing and discriminatory conduct that Plaintiff was subjected to.  Defendant City of Atwater failed to take reasonable steps necessary to remedy such inappropriate conduct or provide Plaintiff with a workplace free from discrimination and harassment.

134.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered past and future special damages and past and future general damages in an amount according to proof at trial.  Defendants' have damaged Plaintiff's financial and economic standing, reputation, and emotional well-being, and have additionally caused Plaintiff to suffer loss of income, employment, career benefits, and emotional distress, suffering, and ridicule, among other damages in an amount according to proof at trial.

135.   The aforementioned discriminatory and despicable conduct of Defendants, and each of them, was done in bad faith, and with malice, fraud, and/or oppression, which subjected Plaintiff to cruel and unjust hardship with conscious disregard of Plaintiff's rights, such as to justify an award of exemplary and punitive damages.

136.   Plaintiff was subjected to the aforementioned discriminatory conduct and harassment of the Defendants, culminating in Plaintiff's termination, such as to justify Plaintiff receiving reinstatement to his position as a police officer for the City of Atwater and APD.

137.    Plaintiff has incurred and continues to incur legal expenses and attorney fees, and is entitled to recover such reasonable expenses and fees, in an amount according to proof at trial.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS
(Against Defendant City of Atwater)

138.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 137 as though fully set forth herein and with the same force and effect.

139.    Pursuant to the Fourteenth Amendment of the U.S. Constitution, no state shall deprive any person of life, liberty, or property, without due process of law.

140.    Plaintiff served as a police officer for the City of Atwater and APD in varying capacities for five years, and as a full time police officer since July of 2013.  On or about February 4, 2016, Plaintiff was unceremoniously and without reason terminated from his position as police officer.  Plaintiff was given no notice of termination.  Plaintiff was given no reason or charges for the termination.  Plaintiff was denied a *Skelly* hearing regarding the termination.  Plaintiff was never given a probationary period review prior to his termination.  In essence, following five years of public service to the City of Atwater, Plaintiff was afforded no procedural due process rights at the time of his termination.

141.    Pursuant to the MOU, Plaintiff was entitled to receive a performance evaluation as a fulltime police officer, entitled to specific notice of termination stating the "reasons for the proposed action" and a "copy of the charges and materials upon which the proposed action is based" within ten (10) days prior to termination, and had the right to request a pre-termination *Skelly* hearing.   As a fulltime police officer for the City of Atwater, Plaintiff was entitled to all of the procedural protections inherent in the MOU.

142.    Pursuant to the MOU, Plaintiff could only be discharged pursuant to the MOU. Defendants discharged Plaintiff without permitting any of the procedural protections granted under the MOU and without providing any justifiable reason for the termination.

143.    Defendant's refusal to follow its own procedures violated the Fourteenth Amendment Due Process Clause and prejudiced Plaintiff at the time of this termination in February 2016.  As a result of Defendant's conduct, Plaintiff has been terminated without the required due process, and has suffered from lost wages, income, and employment.

**EIGHTH CAUSE OF ACTION**
**BREACH OF EMPLOYMENT CONTRACT**
**(Against Defendant City of Atwater)**

144.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 143 as though fully set forth herein and with the same force and effect.

145.    Plaintiff entered into an employment relationship with Defendant City of Atwater.   Said employment relationship was governed by the Atwater Police Officers Association's Memorandum of Understanding (Exhibit Three).

146.    Plaintiff worked for the City of Atwater and APD in varying capacities as a police officer for five years, and worked full time since July of 2013.  On March 19, 2015, he was promoted to a non-reserve police officer position.

147.    Plaintiff substantially performed his job duties throughout the period that he was employed by Defendants.

148.    Under section 5.3 of the MOU, "All employees who are promoted to any new position, regardless of classification, and all employees who are transferred to any new classifications shall be required to complete a probationary period of a minimum of six (6) months."   At the end of Plaintiff's probationary period in or about September 2015, Plaintiff was entitled to receive an actual performance evaluation by his superiors, pursuant to the MOU. In addition, Plaintiff was no longer a probationary employee.

149.    Pursuant to the MOU, Plaintiff was entitled to specific notice of termination that would inform him of "the reasons for the proposed action" and a "copy of the charges and materials upon which the proposed action is based" ten (10) days prior to the termination. Plaintiff never received such notice.

150.    In Plaintiff's position, he was entitled to all of the procedural protections inherent in the MOU.  Plaintiff was improperly denied of his right to a pre-termination *Skelly* hearing, a post-termination hearing, and the MOU's grievance procedures.

151.    Pursuant to the MOU, Plaintiff could only be discharged pursuant to the MOU. Defendants discharged Plaintiff without permitting any of the procedural protections granted under the MOU and without providing any justifiable reason for the termination.

152.    Plaintiff was harmed by Defendants' conduct and the resulting discharge, and has suffered damages due to Defendants' conduct, including but not limited to failure to receive procedural remedies and procedural due process, as outlined in the MOU, past and future wages and benefits, loss of income and employment, career benefits, and other compensatory damages in an amount according to further proof at trial.

## NINTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against all Defendants)

153.    Plaintiff re-alleges and incorporates herein by reference paragraph 1 through 152 as though fully set forth herein and with the same force and effect.

154.    Defendants' conduct as described above was extreme and outrageous, and was performed with the intent to cause, or with the reckless disregard of the probability of causing, Plaintiff's emotional distress.

155.    Defendants' conduct placed Plaintiff in a continuous hostile work environment, as described above, causing Plaintiff to suffer severe emotional distress, anxiety, emotional suffering, and mental anguish.

156.    The emotional distress suffered by Plaintiff was proximately caused by Defendants' extreme and outrageous conduct.  The amount of damages for the harm Plaintiff has suffered is in an amount according to proof at trial.

///

///

///

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT AND**
**THE MEMORANDUM OF UNDERSTANDING**
**(Against Defendant City of Atwater)**

157.    Plaintiff re-alleges and incorporates herein by reference paragraph 1 through 156 as though fully set forth herein and with the same force and effect.

158.    Pursuant to the Section 7 of the Fair Labor Standards Act, 29 U.S.C. 207 *et seq.*, no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. (29 U.S.C. 207(a).)  Further, section 7(k) of the FLSA provides that employees engaged in law enforcement may be paid overtime on a "work period" basis, with a work period ranging between seven (7) to twenty-eight (28) days.   Under the standards of section 7(k), law enforcement personnel are due overtime after about eighty-six (86) hours worked in a two week period.

159.    The overtime requirements listed in the Atwater Police Officers Association MOU largely track those of the Fair Labor Standards Act (FLSA).  Pursuant to section 9.1.1 of the MOU, overtime wages for safety members hired before March 1, 2015 are computed based on a seven (7) day work period and overtime wages must be paid for all hours worked over forty (40) hours worked in the work period.  Pursuant to section 9.1.1 of the MOU, overtime wages for safety members hired after March 1, 2015 are computed based on a fourteen (14) day work period and overtime wages must be paid for all hours worked over eighty-six (86) hours worked in the work period.

160.    In or about July 2013, Plaintiff was promoted by Defendant City of Atwater to serve as a fulltime "reserve" police officer for the APD.  As a fulltime "reserve" officer, Plaintiff was assigned work shifts that increased his hours to forty (40) or more hours per week.

161.    As Plaintiff was hired before March 1, 2015, the applicable work period for Plaintiff was seven (7) days.

COMPLAINT

162.    Pursuant to the applicable sections of the MOU and FLSA, it is unlawful to employ persons without compensating them at a rate of one-and-one-half times that person's regular rate of pay for all time worked beyond forty (40) hours in a workweek, depending upon the number of hours worked by the person on a daily or weekly basis.

163.    In or about the last approximate year that Plaintiff served as a fulltime "reserve" police officer, the City of Atwater ceased paying overtime wages to Plaintiff unless Plaintiff worked in excess of one-hundred and seven (107) hours per a two week period.   In such circumstances, Plaintiff only received overtime pay for hours worked in excess of one-hundred and seven (107) hours over a two week period.

164.    During the period that Plaintiff served the City of Atwater and the APD as a reserve police officer, between approximately July 2013 and mid-March 2015, Plaintiff regularly worked in excess of forty (40) hours per week.  Additional hours worked that Plaintiff was not compensated for includes, but is not limited to, hours spent in Defendants mandatory training programs, off-the-clock hours that Plaintiff was required to work, and hours worked in excess of forty (40) hours per week after being promoted in mid-March 2015.

165.    Although pursuant to the MOU Plaintiff's applicable work period was seven (7) days rather than fourteen (14) days, there were times that Plaintiff worked in excess of one-hundred and seven (107) hours over fourteen (14) day periods.

166.    During the relevant time period, Defendant intentionally and willfully failed to pay overtime wages owed to Plaintiff.  Defendant's conduct described herein, including but not limited to failing to pay overtime rates for all overtime hours worked by Plaintiff, violates the MOU and the FLSA.

167.    Pursuant to 29 U.S.C. 216(b), any employer who violates the overtime wage provisions of the FLSA shall be liable to the employee affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  An action to recover these damages may be maintained against any employer, including a public agency.  In addition, the court shall allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

168.    As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged and deprived overtime compensation by Defendant as requests relief in an amount according to proof at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    For general and special damages, in an amount according to proof;

2.    For compensatory damages, including but not limited to unpaid wages, back pay, front pay, and other monetary relief in an amount according to proof;

3.    For Plaintiff's reinstatement to his position as police officer for the City of Atwater and Atwater Police Department;

4.    For statutory damages and liquidated damages in amounts according to proof;

5.    For pre- and post- judgment interest according to proof;

6.    For attorneys' fees and costs of suit;

7.    For such other and further relief as the Court may deem just and proper.

Dated: June 14, 2016                **GAVRILOV & BROOKS**

By:_____/s/ J. Edward Brooks_____

J. Edward Brooks
Attorney for Plaintiff
THOMAS NIEDERREUTHER